THE MORNING STAR.

*(Circuit Court, N. D. Illinois. November 16, 1882.)*

1. DECREE—APPEAL FROM DISTRICT COURT—PRACTICE—AMENDMENTS.

When an appeal is taken from a decree in admiralty, it suspends the decree of the district court, and the case proceeds *de novo* in the circuit court, and the libelant is the actor having the affirmative, and must make out the allegations of his libel, and the court may allow amendments to the pleadings.

2. SAME—ADDITIONAL TESTIMONY.

Additional testimony may be take on both sides in the circuit court, and the court may protect the rights of the parties where amendments are allowed.

3. VESSELS—IN CUSTODY OF MARSHAL—PURCHASER.

Where the claimant became the purchaser of a vessel while she was in the custody of the marshal for the very bill of supplies in controversy in this case, furnished at a foreign port on her credit, to render her seaworthy and competent to proceed on her voyage, he is not entitled to the protection sometimes accorded to a purchaser for value and without notice of maritime liens thereon.

In Admiralty. Appeal from the district court.

*Mr. Kremer,* for libelant.

*Mr. Condon,* for defendant.

DRUMMOND, C. J. The libel was filed in the district court on the twentieth day of January, 1882, which alleged that in July, 1880, the libelant had furnished to the schooner, while lying at the port of Buffalo, certain supplies, in order to render her seaworthy and competent to proceed on her voyage, these supplies being furnished at the request of the schooner and on her credit, the master not having money or credit to purchase them. The libelant further alleges there was a

balance due for the supplies furnished of $1,421.44. On February 25, 1882, the claimant, Morris R. Hunt, filed an exception in the district court alleging "that he is the owner of said schooner Morning Star, with her boat, tackle, apparel, and furniture; that he excepts to said libel, and alleges that the said claim stated in said libel is not a lien on said vessel, and that the same is stale, and not enforceable against her in the hands of or owned by claimant, who is a *bona fide* purchaser for value." On a hearing before the district court the exceptions were overruled, and the claimant required to answer the libel, on failure of which the court entered a decree in favor of the libelant for the amount due, from which decree the claimant has taken an appeal to this court, and now moves to amend the exceptions in order to show when he became the purchaser of the schooner, and thereby to raise the question whether or not he is a *bona fide* owner, so as to relieve her from the maritime lien set up in the libel.

The general rule is that when an appeal is taken from a decree in admiralty it suspends the decree of the district court, and the case proceeds *de novo* in the circuit court. The libelant is, as he was in the district court, the actor in the case. He still has the affirmative, and must make out the allegations of his libel; and there can be no doubt that it is competent for the court to allow amendments to the pleadings—either to the libel or to the answer—in order that the case may be properly heard anew in the circuit court. It is also a matter of every-day practice for additional testimony to be taken on both sides in the circuit court, and that testimony may entirely change the case as it stood before the district court. It is also competent for the circuit court to protect the rights of parties where amendments are allowed to the pleadings. In this case the claimant relied upon his exceptions, and no proof was offered, and he has brought the case to this court upon the ruling of the district court, which held that the exceptions were not sufficient. The subject of costs is always in the control of the court, whether a decree be given for the libelant or for the defendant.

There does not seem to be any case cited by counsel which is precisely like this, but I am inclined to think that it is within the principle of some of the cases cited by the counsel of the claimant, and that it is not an unreasonable exercise of the discretion of the court to allow the amendment which is sought to be made in this case. Therefore, I shall permit it to be filed; but I must impose conditions upon the claimant, and hold that, as a condition upon which this amendment is allowed, the costs of the district court shall be

paid. The decree of the district court, as it stands upon the pleadings, I think was right. The claimant seeks by an amendment of the pleadings to present the case in a different aspect to this court, which may, perhaps, show that the decree of the district court should not be permitted to stand; and in order to receive that favor, it seems to me that he should pay the costs of the district court. If, upon proceeding further in this case, he shall succeed in making out his defense, then he would be entitled to the costs in this court. I shall, therefore, allow the amendment. I would suggest to the counsel that he had better make the amendment in accordance with the exact facts in the case, so if he wants to make it a question of law, it will fairly arise upon the exceptions, and render any proof on either side unnecessary.

---

(January 30, 1883.)

In accordance with the leave granted by the court, the claimant in this case has filed an amended exception, in which he alleges that he became a *bona fide* owner, for a valuable consideration of said schooner on or about February 25, 1882, and that the demand set forth in the libel is not enforceable in admiralty against said schooner in the hands of and owned by the claimant.

A monition issued on the same day that the libel was filed, and the marshal levied the same on the schooner on that day. On March 3, 1882, the claimant gave the requisite bond, and the schooner was released from custody. It therefore appears by the record in this case that at the time the claimant purchased the schooner she was in the custody of the marshal, held under the bill for supplies furnished in this case, those supplies being furnished in July, 1880; some payments having been made on the same, as shown by the libel, as late as October 15, 1880. The remaining part of the season of navigation of 1880, from October 15th, and the whole of the season of 1881, were permitted to pass without any attempt to enforce the lien; and, as already stated, the libel was not filed in the district court until the twentieth day of January, 1882, and the question is whether from that delay the lien of the libelant was gone. I am of the opinion that it was not.

It is not necessary for the court to decide in this case what would have been the effect of that delay, provided, within the meaning of the law, the claimant had become a *bona fide* purchaser of the schooner; but it seems clear that having made the purchase when

the schooner was *in custodia legis* for the very bill of supplies in controversy in this case, that he could not acquire a title as a *bona fide* purchaser against the libelant. At that time the schooner was in the custody of the marshal to answer for the supplies furnished in this case, and I think the claimant is, therefore, not entitled to the protection which is sometimes accorded to purchasers of vessels made for value, and without notice of maritime liens against them.

A decree will, therefore, be rendered for the libelant.